# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| KERI RUSSELL,<br><br>        Plaintiff,<br><br>vs.<br><br>DAIICHI-SANKYO, INC.,<br><br>        Defendant. | CV 11-34-BLG-CSO<br><br>**ORDER ADDRESSING MOTIONS IN LIMINE** |

Keri Russell ("Russell") claims that Daiichi-Sankyo, Inc. ("Daiichi") wrongfully terminated her employment in violation of Montana's Wrongful Discharge from Employment Act ("WDEA"), MCA § 39-2-901, et seq. *Cmplt. (Court Doc. 4) at 1.* The following motions are pending:

1. Daiichi's motions in limine (*Court Doc. 29*); and

2. Russell's motion in limine (*Court Doc. 34*).

Having reviewed the parties' briefs and submissions, the Court rules as set forth below.

## I.    BACKGROUND

The parties are familiar with the underlying facts.  The Court will recite them here only as directly pertinent to the pending motions.

## II.    LEGAL STANDARD

In *BNSF Railway Co. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010) (Cebull, C.J.), this Court described the legal standard for motions in limine as follows:

Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence.  Judges have broad discretion when ruling on motions in limine.  *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  But a motion in limine should not be used to resolve factual disputes or weigh evidence. *C & E Services, Inc., v. Ashland Inc.*, 539 F.Supp.2d 316, 323 (D. D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio  2004); *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554 (N.D. Ill. 2008); *Wilkins v. K-Mart Corp.*, 487 F.Supp.2d 1216, 1218-19 (D. Kan. 2007).  "Unless evidence meets

this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins*, 487 F.Supp.2d at 1219.

It is settled law that rulings on motions in limine are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.'" *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d at 846.

## III.  DISCUSSION

### A.  Daiichi's Motions

Daiichi moves in limine to exclude from trail:

(1)    testimony from former Daiichi employees Lynette Chaney ("Chaney") and Michael Fryman ("Fryman"), and from Russell's former Daiichi co-worker, Alisa Vandersloot ("Vandersloot"), *Daiichi's Br. in Support of Mtn. (Court Doc. 30) at 2, 4-8*;

(2)    any evidence regarding damages not available under the WDEA, including any respecting Russell's physical or mental health and compensatory or other damages, *id. at 2, 8-10*;

(3)    copies of or testimony about internet blogs concerning Daiichi or its representatives, *id. at 2, 10-11*; and

(4)    any evidence regarding POD programs generated after Russell's discharge from employment, *id. at 3, 12-13*.

### 1.  Witnesses Cheney, Fryman, and Vandersloot

Daiichi moves the Court to exclude testimony from Chaney, a former Daiichi sales representative, Fryman, a former Daiichi district manager, and Vandersloot, Russell's former Daiichi co-worker.  Daiichi moves to exclude the witnesses for two principal reasons: (1) Russell waited until the day discovery closed to disclose Chaney and Fryman; and (2) all three witnesses lack personal knowledge of Russell's

4

performance and discharge rendering their expected testimony irrelevant. Specifically, Daiichi argues that Chaney and Fryman "were disclosed on the date discovery closed, had different job classifications than [Russell], did not supervise her, were not in her chain of command and ... do not have personal knowledge of her performance or discharge or the events leading up to her discharge[.]" *Court Doc. 30 at 2.* Respecting Vandersloot, Daiichi argues that she "reported to a different manager [than Russell] and has no personal knowledge of [Russell's] performance or discharge and whose knowledge was disclosed on the date discovery closed[.]" *Id.*

In Russell's supplemental disclosures made on the January 31, 2012 discovery deadline, she listed Chaney and Fryman as witnesses with discoverable information and described them as follows:

Lynette Chaney
...
Former sales representative, [Daiichi]. Generally, she has knowledge concerning all of the job responsibilities of a representative, including interactions with and supervision by managers. She has direct knowledge of how [Daiichi] treated its employees and has knowledge concerning the POD program; how reps would be pressured to have so many PODS per quarter with dollars parceled out for that reason alone and to put money in the doctors' hands so that they would write more scripts.

\*　　\*　　\*

Michael Fryman
...
Former [Daiichi] District Manager PC3; generally, he has knowledge concerning all of the job responsibilities of a District Manager, including interactions with and supervision of sales representatives.  He has direct knowledge of how [Daiichi] treated its employees and has knowledge concerning potential manipulation of [Daiichi] sales numbers in terms of performance and ranking.  He has knowledge concerning the ethics of the [Daiichi] Physician Opinions and Discussions (POD) program – how [Daiichi] focused everything around PODs and made payments to doctors that wrote high numbers of [Daiichi] prescriptions.

*Daiichi's Br. in Spt. of Mtns. in Limine (Court Doc. 30), at Ex. A (Pltf's Supplemental Disclosure (Court Doc. 30-1)) at 2-3.*

Russell also listed Vandersloot and described her knowledge as follows:

Alissa Vandersloot
...
Keri Russell's PC2 partner, former sales representative, [Daiichi].  Generally, she has knowledge concerning all of the job responsibilities of a representative, including interactions with and supervision by managers.  She has direct knowledge of how [Daiichi] treated its employees and has knowledge concerning the POD program, and how reps would be pressured to have so many PODS per quarter with dollars parceled out for that reason alone and to put money in the doctors' hands so that they would write more scripts.

*Id.* at 5.

Daiichi argues that the Court should exclude their testimony because: (1) Chaney and Fryman may not even know Russell or her supervisors and thus lack personal knowledge that would render their testimony relevant; (2) Russell did not list Chaney and Fryman in her supplemental disclosures as persons with whom she has discussed her discharge or lawsuit; (3) Russell did not mention Chaney and Fryman in her deposition; (4) any testimony that Russell may try to introduce into evidence concerning grievances of other employees or how Daiichi treated its employees is irrelevant to the overarching issue of whether Russell's discharge was wrongful; (5) any probative value of testimony about complaints from other former employees is outweighed by the testimony's potential to confuse the jury and waste trial time; (6) Russell's descriptions provided in her supplemental disclosures do not meet Rule 26's[1] standard of identifying particular testimony she plans to use to support one or more of her claims; and (7) Russell waited until the January 31, 2012 discovery deadline to identify Chaney and

---

[1]References to rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

Fryman and to describe Vandersloot's knowledge and expected testimony. *Court Doc. 30 at 3-8.*

In response, Russell argues that: (1) Daiichi had known since late January 2012 that Russell's counsel, through Vandersloot, became aware of Chaney and Fryman after Daiichi's counsel had contacted Vandersloot; (2) Russell's counsel offered Daiichi's counsel assistance in seeking modification of the scheduling order to allow Daiichi to depose Chaney and Fryman, but Daiichi's counsel "made a tactical decision not to do so, and instead, seeks to exclude these witnesses from testifying"; (3) all three witnesses' "general knowledge of the job responsibilities of [Daiichi] sales representatives and district managers, the POD programs, and the purposes of the payments to doctors is certainly relevant to the stated issues in this lawsuit[ ]"; (4) Fryman's knowledge of " 'potential manipulation of [Daiichi] sales number[s] in terms of performance and ranking' go directly to the heart of [Daiichi's] pretext of poor performance in the termination of [ ] Russell"; and (5) Russell disclosed Vandersloot in her initial disclosure on May 17, 2011, disclosed her on October 13, 2011, as a person with knowledge of

relevant facts, listed her in a December 13, 2011 answer to Daiichi's discovery request seeking the identity of persons with whom Russell had discussed her lawsuit, and mentioned her frequently in her deposition. *Russell's Resp. Br. (Court Doc. 38) at 2-8, 12-13* (citations omitted).

In reply, Daiichi argues that Russell's descriptions of these witnesses' knowledge are legally inadequate. It notes that it is irrelevant that Russell's counsel offered to assist Daiichi in seeking modification of the scheduling order to allow Daiichi to depose Chaney and Fryman. Daiichi argues that the federal civil procedure rules require the party disclosing a witness to tell the other party the "subjects of discoverable information ... that the disclosing party may use to support its claims or defenses." *Daiichi's Reply (Court Doc. 46) at 2-3* (quoting Rule 26(a)(1)(A)(i)). Here, Daiichi argues that Russell's "eleventh hour" supplemental disclosure did not mention "Russell, her supervisor Andrie Leday, her performance, her discharge or her alleged complaints about POD programs[.]" *Id. at 3.* Thus, Daiichi argues, it "cannot be faulted for declining the opportunity to take three more

depositions." *Id.* Because Russell does not claim that the witnesses

have any personal knowledge of her performance or discharge, any

testimony they may offer is irrelevant and not admissible. *Id. at 3-4.*

Respecting Daiichi's argument that these witnesses should be

excluded because Russell disclosed them on the day discovery closed,

the Court is not persuaded. Rule 26(a)(1)(A)(i) provides that a party

must disclose to other parties

> the name and, if known, the address and telephone number
> of each individual likely to have discoverable information –
> along with the subjects of that information – that the
> disclosing party may use to support its claims or defenses[.]

Rule 26(a)(1)(A)(i).

Parties also are obligated to timely supplement disclosures under

Rule 26(e), which provides in relevant part:

> A party who has made a disclosure under Rule 26(a) – or
> who has responded to an interrogatory, request for
> production, or request for admission – must supplement or
> correct its disclosure or response . . . in a timely manner if
> the party learns that in some material respect the disclosure
> or response is incomplete or incorrect, and if the additional
> or corrective information has not otherwise been made
> known to the other parties during the discovery process or in
> writing[.]

The duty to "supplement" a disclosure "in a timely manner" is

intended "to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence." *William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1258 (2011) (citing *ATD Corp. v. Lydall*, 159 F.3d 534, 550-51 (Fed. Cir. 1998) (excluding patent evidence first disclosed long after close of discovery)). This Court has stated:

> The duty to supplement is not an opportunity to add to information which should have been disclosed initially under Rule 26(a). *See Keener v. USA*, 181 F.R.D. 639 (D. Mont. 1998). Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Id.* at 640; *see also Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, Inc.*, 1993 WL 129781, n.18 (E.D. Cal. 1993) (plaintiff precluded from using supplementation "as a vehicle to allege new theories or contentions after the close of discovery").

*Erickson v. Ford Motor Co.*, 2007 WL 5527512, at *6 (D. Mont., 2007).

Applying the foregoing authority to the case at hand, the Court concludes that Russell's supplemental disclosure of Chaney and Fryman was provided "in a timely manner" despite Daiichi's argument that it was made at "the eleventh hour." First, the disclosure was made before the close of discovery, albeit on the day discovery closed. Also,

the record reflects that Daiichi was aware of Vandersloot's existence at least as early as Russell's initial disclosure made on May 17, 2011. It became reasonably apparent that Vandersloot had knowledge of Russell and Daiichi long before the close of discovery.

Second, Russell responded to Daiichi's motion with recitation of a rather detailed time line that explains how and when both Russell and Daiichi's counsel became aware of Chaney and Fryman. *Court Doc. 38 at 3-5.* In summary, the time line indicates that Daiichi's counsel telephoned Vandersloot in mid-January 2012. Shortly after, Russell's counsel contacted Vandersloot. Sometime after that, Vandersloot gave Russell's counsel Chaney's information and a lead on Fryman's information. By the end of January 2012, Russell supplemented her disclosures with the witnesses' information. *Id.* Daiichi does not dispute this representation of events. The time line shows that Russell became aware of these witnesses' existence only shortly before Daiichi's counsel.

Third, even if it were to find that Russell did not disclose Chaney and Fryman – or Vandersloot's knowledge – in a timely manner, the

Court would still conclude that they should not be excluded from testifying on that basis. Rule 37(c)(1) "gives teeth" to Rule 26(a)'s initial disclosure requirements and Rule 26(e)'s requirement that parties timely supplement incomplete or incorrect discovery responses. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (applying rule in Rule 26(a)(2) violation context) (quoting *Yeti by Molly Ltd.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). The rule provides a variety of remedies, including excluding evidence, requiring payment of expenses and fees caused by the failure to supplement, informing the jury of the party's failure to comply, or imposing "other appropriate sanctions[.]" Rule 37(c)(1). The rule "is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." *Goodman*, 644 F.3d at 827 (citing *Yeti by Molly*, 259 F.3d at 1106 and Rule 37 advisory committee's note (1993)).

No sanction is warranted, however, where it is found that noncompliance with Rule 26 was "substantially justified" or "harmless." Rule 37(c)(1); *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citing *Yeti by Molly*, 259 F.3d at 1106).

13

Factors courts may consider in determining whether a failure to timely supplement a discovery response is substantially "justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Durham v. County of Maui*, 2011 WL 2532690, at *4 (D. Hawai'i, June 23, 2011) (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (unpublished) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, 2010 WL 4591596, at *7 (N.D. Cal., Nov. 3, 2010). The party facing sanctions bears the burden of proving substantial justification or harmlessness. *Goodman*, 644 F.3d at 827 (citing *Yeti by Molly*, 259 F.3d at 1106); *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 781 (6th Cir. 2003).

Here, the Court concludes that Russell's disclosure of Chaney and Fryman on the day discovery closed was both justified and harmless. Also, the Court concludes that disclosure of Vandersloot's specific

knowledge on the day discovery closed was harmless. First, as discussed above, there appears to be no bad faith or willfulness on Russell's part in the timing of any of the disclosures. As noted, Russell's counsel became aware of Chaney and Fryman only a short time before the supplemental disclosure. Thus, the timing of their disclosure was substantially justified.

Second, Russell's attorneys have represented, and Daiichi's counsel does not dispute, that they offered to help seek modification of the scheduling order to allow Daiichi's counsel an opportunity to depose the witnesses. *Court Doc. 38 at 5* (citing Ex. 7, Waddell email to Bender dated Feb. 21, 2012). Daiichi's counsel declined the offer. *Id.* (citing Ex. 8, Bender email to Waddell). Thus, it appears that there was no prejudice to Daiichi, and even if there was Daiichi was afforded the opportunity to cure it. The same is true respecting Vandersloot, about whom Daiichi knew long before the close of discovery. Thus, the timing of these disclosures was harmless.

Finally, it appears there will be no disruption of the trial because of the supplemental disclosure respecting all three witnesses. Trial is

set to commence on June 18, 2012. Ample time remains for trial preparation.

For all of these reasons, the Court will deny Daiichi's motion to the extent it seeks exclusion of the testimony of Chaney, Fryman, and Vandersloot on the basis that they were not timely disclosed.

Next, the Court also will deny Daiichi's motion to the extent it seeks to exclude the witnesses' testimony on the basis that it is not relevant. In line with the authority detailed above, at this juncture it is difficult, if not impossible, for the Court to determine specifically how, or even if, Russell will attempt to use Chaney, Fryman, and Vandersloot as witnesses. For now, the Court will deny Daiichi's motion to the extent it seeks exclusion of the witnesses, leaving open to Daiichi the opportunity to make appropriate objections at trial.

### 2. Evidence Regarding Damages Not Available Under the WDEA

Daiichi seeks exclusion of any evidence regarding damages not available under the WDEA, including any respecting Russell's physical or mental health and compensatory or other damages. *Court Doc. 30 at 8-10.* Daiichi advances a two-pronged argument. First, Daiichi argues

that "any evidence or testimony regarding damages not available [under the WDEA] must be excluded as irrelevant." *Id. at 10.*

Second, Daiichi notes that Russell "has named a number of health care providers as individuals with information that she may use to support her claims." *Id. at 9.* Specifically, as Daiichi explains, Russell has identified Dr. Kurtz, who "diagnosed her with a severe stress reaction and ordered her to be off work for at least 30 days while he oversaw her reaction to the medication he prescribed for her." *Id.* (quoting Russell's Supplementary Disclosure at 4). Daiichi argues that testimony on this subject does not relate to Russell's discharge and is, therefore, irrelevant. *Id.* Also, Daiichi argues that Dr. Kurtz made the diagnosis on the day Leday was to meet with Russell to fire her; thus, the decision to discharge Russell was already made and not related to her termination from employment. *Id. at 9-10.*

In response to Daiichi's request to exclude any evidence regarding damages not allowed by the WDEA, Russell "agrees that the damages in this case are limited to the remedies under the [WDEA]." *Russell's Resp. Br. (Court Doc. 38) at 2, 13-14.* Thus, to the extent Daiichi's

motion relates to exclusion of evidence regarding damages not allowed by the WDEA, it will be granted.

Next, respecting Daiichi's request to exclude any evidence regarding Russell's physical or mental health, Russell argues that "it is clear that [Daiichi] intends to offer evidence not only of performance issues, but also [Russell's] alleged failure to cooperate with her supervisor's ever-increasing demands. Evidence of [Russell's] two illnesses would only be offered to combat these unfair and irrelevant attacks." *Id. at 14.*

In reply, Daiichi argues that Dr. Kurtz's note placing Russell off of work for 30 days was written after Daiichi had already decided to fire Russell, and her health-related work restriction had nothing to do with her discharge. *Court Doc. 46 at 6.*

The Court is not inclined to exclude any evidence without first knowing the purpose and context for which it is being offered. Here, it is not entirely clear to the Court what Russell means when she states that she intends to try to introduce evidence of her two illnesses "only ... to combat ... unfair and irrelevant attacks [ ]" respecting her "alleged

18

failure to cooperate with her supervisor's ever-increasing demands." *Court Doc. 38 at 14.* Such "alleged failure" would appear to be relevant to her performance, which, of course, is at issue in this wrongful discharge action. But, there may be other purposes for which she may attempt to introduce such evidence at trial. For this reason, the Court will deny Daiichi's motion to the extent it seeks exclusion at this time of evidence of Russell's two illnesses, leaving open to Daiichi the opportunity to make appropriate objections at trial.

### 3.   Evidence Concerning Internet Blogs

Daiichi seeks exclusion of evidence from Internet blogs, including cafepharma, arguing that such evidence is hearsay and must be excluded under Fed. R. Evid. 802 and 901. *Court Doc. 30 at 10-11.*

Russell responds that she "does not seek to offer into evidence what are clearly hearsay statements from primarily unidentified contributors for the truth of the matters asserted, and [she] will not attempt to do so at trial, without first making an offer of proof outside the presence of the jury." *Court Doc. 38 at 15.* Russell qualifies her response, however, by adding that "[t]here may be non-hearsay

purposes which appear during trial which make the CafePharma.com forum statements probative and admissible – such as identification of relevant CafePharma.com contributions by former or current [Daiichi] employees or managers, if any." *Id.*

In reply, Daiichi notes its confusion at Russell's response and argues that "[i]f someone proposes to identify someone else as an author of an anonymous blog entry, that person should have been identified by now ... [and] nothing regarding this blog has been disclosed in discovery or in the Initial disclosures." *Court Doc. 46 at 7.*

The Court, sharing Daiichi's confusion with Russell's response, concludes that this portion of Daiichi's motion will be granted. If Russell intends to attempt to introduce evidence from a blog, she already should have identified a witness to lay the foundation for or otherwise authenticate such evidence. In the absence of any indication in the record that she has done so, the Court must grant this portion of Daiichi's motion. The Court may reconsider this ruling at trial upon a proper showing by Russell. *Ohler*, 529 U.S. at 758 n.3.

### 4. __Evidence of Post-Discharge POD Programs__

Daiichi seeks to preclude Russell from attempting to introduce any evidence respecting whether POD programs have been found to be illegal in other jurisdictions at some date after Russell's discharge. *Court Doc. 30 at 12-13.* Daiichi argues that Russell has indicated her intent to introduce such evidence but has provided no such evidence "and certainly none contemporary with her employment." *Id. at 12.* It argues that any such evidence is not relevant to Russell's claims and that she "must not be allowed to introduce generic evidence that [Daiichi] or its POD programs must be 'bad' or should be punished." *Id. at 13.*

Russell responds that Daiichi's motion is premature because of the Court's recent ruling that Daiichi "must provide information concerning POD payments and possible investigations into its POD program." *Court Doc. 38 at 16.* Russell also "requests the court to delay any responsive briefing and decision on the POD issues until the material has been provided pursuant to the Court's order, and evaluated by the parties." *Id.*

Daiichi replies that "Russell has not really responded to [Daiichi's] argument that events occurring after Russell's discharge should be excluded except to state that the motion is premature." *Court Doc. 46 at 7.* Daiichi argues that Russell misses the two reasons for its motion: "First, Keri Russell could not have been discharged for reasons unknown to the employer at the time it made the decision to discharge her. Second, evidence unrelated to Keri Russell's discharge which is simply offered to make [Daiichi] look like a bad employer is irrelevant and prejudicial." *Id. at 7-8* (citations omitted). Daiichi notes that "Russell seems to indicate that she might want to use the evidence of 'possible investigations' which occurred after Russell's discharge[,]" but that Daiichi objects because such evidence would be irrelevant and "an investigation does not indicate any wrongdoing[.]" Id. at 8.

On the current record, it is not clear how, or even whether, Russell intends to use the type of evidence to which Daiichi objects in its motion in limine. Without more information respecting whether, how, and for what purpose such evidence might be introduced, it is impossible for the Court to grant Daiichi the relief it seeks. Thus, the

Court will deny the motion.  Counsel, of course, may make any appropriate objection at trial.  If Russell intends to offer this type of post-dismissal evidence, however, her counsel shall alert the Court and opposing counsel before attempting to submit it to the jury.

## B.   <u>Russell's Motion</u>

Russell moves in limine for exclusion of "[a]ny evidence, question, statement, or argument that [Russell] received unemployment benefits."  *Russell's Mtn. in Limine (Court Doc. 34) at 2.*  She argues that an award of damages under the WDEA is not offset by the amount of unemployment benefits an employee receives after termination. *Russell's Br. in Support of Mtn. in Limine (Court Doc. 35) at 2.*  Rather, Russell argues, only interim earnings, " 'including amounts the employee could have earned with reasonable diligence,' must be deducted from the amount awarded for lost wages."  *Id. at 2-3.*

Daiichi objects to Russell's motion.  It advances three arguments. First, Daiichi argues that Russell's applications for unemployment benefits contain her own explanation for her discharge.  If those explanations differ from what Russell contends now, Daiichi argues,

they are relevant respecting both her credibility and the reason for her discharge.  *Daiichi's Resp. Br. (Court Doc. 39) at 2-3.*

Second, Daiichi concedes that unemployment benefits are not "earnings" as contemplated by MCA § 39-2-905.  But, it argues, they are benefits to the employee that the employer pays.  As such, they fall within the type collateral source subject to be applied to offset any damages recovered.  *Id. at 3-5.*  Daiichi argues that this conclusion is supported by the long-standing principle in Montana law that employment is a contractual relationship.  Damages are limited only to those that will replace what a wrongfully-terminated employee loses. Thus, Daiichi argues, damages awarded for a wrongful termination are not permitted to be a windfall for the employee and unemployment benefits received must be applied to offset the amount of any damages awarded.  *Id.*

Finally, Daiichi argues that Russell's receipt of unemployment benefits is relevant to mitigation of her damages.  Daiichi argues that if the jury determines that Russell was wrongfully discharged, it is required to deduct from her lost wages amounts Russell earned and

"amounts the employee could have earned with reasonable diligence."
*Id. at 7* (quoting MCA § 39-2-905(1)).  Because the manner and facts of
Russell's job search are relevant to any damages calculation, and
because Daiichi contends that Russell was not diligent in her job
search, Daiichi argues that "[a] reasonable jury could conclude that she
was not really motivated to find comparable work because she was
receiving unemployment benefits."  *Id.*  And, Daiichi argues,
unemployment benefits are reflected on Russell's tax returns, which
Daiichi is entitled to use as evidence of interim earnings.  *Id. at 8.*
Thus, Daiichi argues, evidence of unemployment benefits is relevant.
*Id.*

In reply, Russell argues that: (1) the WDEA's plain language does
not provide for subtraction of unemployment benefits from total
damages awarded for wrongful discharge, *Russell's Reply Br. (Court
Doc. 47) at 3-4*; (2) unemployment benefits are not a "windfall" as
Daiichi suggests because the WDEA already eliminates damages for
pain and suffering, emotional distress, and compensatory damages
beyond four years of lost wages and fringe benefits, *id. at 5*; (3)

unemployment benefits are not admissible as evidence of failure to diligently seek employment because a benefits recipient must be actively seeking employment to receive the benefits and evidence that Russell received them would confuse the jury , *id. at 5-7*; (4) Russell's unemployment benefits application is not relevant because it does not reflect what Russell believes are the reasons for her discharge but rather reflects Daiichi's stated reasons for firing Russell, *id. at 8-10*; and (5) income tax returns are not relevant to mitigation because there is no dispute about amounts of income declared in Russell's tax filings and she is willing to stipulate to the amount of income stated in them, *id. at 10*.

The Court will grant Russell's motion to the extent it seeks to exclude evidence respecting her receipt of unemployment insurance benefits following her discharge from employment with Daiichi. The Court will deny the motion, however, to the extent it seeks to exclude her benefit applications.

The amount Russell received in unemployment insurance benefits is irrelevant and, therefore, inadmissible. Fed. R. Evid. 401 and 402.

The WDEA provides, in pertinent part, that "[i]nterim earnings, including amounts the employee could have earned with reasonable diligence, must be deducted from the amount awarded for lost wages." MCA § 39-2-905. Unemployment insurance benefits are not "earnings" as contemplated by the WDEA, as Daiichi concedes. *Court Doc. 39 at 3*.

In reaching this conclusion, the Court is not persuaded by Daiichi's argument that an employer's funding of unemployment benefits transforms them into "earnings" subject to subtraction from an award of damages under the WDEA. Daiichi has cited no controlling authority that mandates this conclusion, and the Court was unable to locate any. Also, Daiichi presents no reasonable basis for concluding that an award of unemployment insurance benefits would become a windfall in the event Russell prevails on her wrongful discharge action. And receipt of such benefits does not give rise to a reasonable inference that a recipient is unmotivated to seek employment. A prerequisite to receiving such benefits is, of course, that a recipient "apply for available and suitable work when directed to do so by the employment office or the department [of labor] ... and accept an offer ... of suitable work that

27

the individual is physically able and mentally qualified to perform."
MCA § 39-51-2304(a).

To the extent Russell seeks to exclude her unemployment insurance applications, the Court will deny her motion. The Court concludes the application documents may contain information relevant to Russell's credibility and to the reason for her discharge. Thus, Russell's motion is appropriately denied in this respect.

## IV.  CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Daiichi's motion in limine (*Court Doc. 29*) is GRANTED to the extent it seeks exclusion of evidence from Internet blogs, including CafePharma.com, but DENIED in all other respects, as set forth herein.

IT IS FURTHER ORDERED that Russell's motion in limine (*Court Doc. 34*) is GRANTED to the extent it seeks to exclude evidence respecting her receipt of unemployment insurance benefits, but

DENIED to the extent it seeks to exclude her benefit applications, as discussed herein.

DATED this 17th day of May, 2012.


/S/ Carolyn S. Ostby
United States Magistrate Judge